# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FREDRICK GOINGS, #M36022,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00212-SMY |
| | ) | |
| **JOHN BALDWIN,** *IDOC Director* | ) | |
| **KENT E. BROOKMAN,** | ) | |
| **CORRECTIONAL OFFICER CRABTREE,** | ) | |
| **MAJOR PAGE,** | ) | |
| **MICHAEL M. KEYS,** | ) | |
| **KIMBERLY S. BUTLER,** | ) | |
| **FRANK EOVALDI,** | ) | |
| **YVETT BAKER,** | ) | |
| **JASON N. HART,** | ) | |
| **CORRECTIONAL OFFICER BRIDGES,** | ) | |
| **MAJOR CHILDERS,** | ) | |
| **MAJOR MONTE,** | ) | |
| **MICHAEL P. MELVIN,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.** | ) | |
| **JOHN DOE 1**, *Pontiac Correctional Staff*, | ) | |
| **JOHN DOES 2-3**, *Pontiac Correctional Staff*, | ) | |
| **JOHN DOES 4-7**, *Menard and Pontiac Mental Health and Medical Directors* | ) | |
| **JOHN/JANE DOE 8**, *Pontiac Placement Officer,* | ) | |
| **JOHN/JANE DOE 9**, *Menard Placement Officer,* | ) | |
| **JOHN DOES 10-17**, *C/O and I.A. Officers, Pontiac CC,* | ) | |
| **JOHN DOES 18-19**, *Adjustment Committee Member*, | ) | |
| **JOHN DOES,** *Correctional or Healthcare Staff, Menard CC,* | ) | |
| **JOHN DOES,** *Correctional or Healthcare Staff, Pontiac CC,* | ) | |
| **SHERRY BENTON**, *ARB member*, | ) | |
| **MELISSA PHOENIX**, *ARB member,* | ) | |
| **LIEUTENANT LEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# **MEMORANDUM AND ORDER**

1

**YANDLE, District Judge:**

Plaintiff Fredrick Goings, an inmate in the custody of the Illinois Department of Corrections ("IDOC") currently incarcerated at Illinois River Correctional Center, brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He asserts claims under the Eighth and Fourteenth Amendments along with state law claims related to a disciplinary proceeding and his confinement in segregation. He seeks injunctive relief and monetary damages. (Doc. 1).

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 42): While incarcerated at Menard Correctional Center ("Menard"), Plaintiff was accused of the IDOC offense of "violent assault" on his cellmate on February 24, 2016. Plaintiff was found in his cell with his cellmate who was incoherent, lying on the floor in a pool of blood, and with a swollen and bleeding face.

In the weeks prior to February 24, 2016, Plaintiff's cellmate engaged in "homosexual and oppressive tactics and harassment" in the cell. He invaded Plaintiff's privacy several times, including one occasion when he removed the curtain in the bathroom section of the cell while Plaintiff was standing in the nude bathing. Plaintiff's cellmate also used offensive and derogatory

language and challenged Plaintiff to a fight on multiple occasions. Plaintiff advised C/O Crabtree, Menard Placement Officer John/Jane Doe 9, and Warden Butler of these incidents, and on multiple occasions, requested verbally and/or in writing that he or his cellmate be reassigned to avoid the possibility of a violent confrontation. He also wrote Menard Internal Affairs Officer John Doe 20. Prior to February 2016, Plaintiff wrote letters to the Director of IDOC requesting single-man cell status and a transfer from Menard because of targeted attacks arranged and orchestrated by Menard correctional staff and because he developed a deep-sleep medical condition as a result of a strangulation incident while incarcerated.

On February 24, 2016, Plaintiff's cellmate threatened his life and told him he would be leaving the cell by choice or by force. The cellmate initiated a physical confrontation and Plaintiff defended himself. Plaintiff prevailed and the cellmate was carried out on a stretcher and taken to urgent care. Plaintiff was placed in segregation. Plaintiff was later informed by his former cellmate that correctional staff encouraged the cellmate to start a fight with Plaintiff to force him out of the cell and into segregation so that correctional staff could arrange to have him harassed while in segregation. Plaintiff was informed by witnesses that correctional staff solicited and encouraged his cellmate to start the fight on February 24, 2016.

Plaintiff received a disciplinary ticket for violent assault. A "re-written" disciplinary report was authored by C/O Bridges, Major Childers, and Major Frank Eovaldi. C/O Bridges, Major Page, Major Monte, Major Childers, and Major Eovaldi made false and misleading oral and written statements to Plaintiff, healthcare staff, and the adjustment committee.

Lieutenant Lee and Jason Hart denied Plaintiff a reasonable continuance to prepare for the hearing, denied him a copy of the alleged victim's written statement, and failed to interview the witnesses Plaintiff tendered prior to the March 1, 2016 hearing. Hart failed to consider evidence

3

that exonerated Plaintiff. Warden Butler failed to consider evidence that established Plaintiff's innocence prior to her concurrence with the decision of the adjustment committee and, instead, merely rubber stamped the committee's findings and decision. Yvett Baker failed to consider evidence that pointed to Plaintiff's innocence, failed to interview witnesses prior to the hearing, and failed to provide proper notice of the proceedings.

Kent Brookman and Michael Keys did not give Plaintiff notice of a rehearing held on June 1, 2016. Brookman failed to provide Plaintiff with a copy of the alleged victim's statement, failed to interview witnesses, and failed to give Plaintiff a copy of the re-written allegations prior to the hearing. The hearing was held without Plaintiff present. Plaintiff was transferred from Menard to Pontiac on June 1, 2016, prior to the time of the hearing. Warden Butler was aware that Plaintiff transferred to Pontiac prior to the 7 a.m. – 3 p.m. shift and that it was therefore impossible for Plaintiff to be at a hearing that took place at Menard at 7:15 a.m. on June 1, 2016. John Does 18 and 19 conducted the rehearing on June 1, 2016 under false pretenses, based on false reports, and without Plaintiff's presence.

Plaintiff wrote letters to former acting IDOC Director John Baldwin advising him of the lack of due process and abuse of process related to the disciplinary proceedings, but no action was taken in response. Lee, Brookman, Keys, Baker, Hart, Baldwin, Crabtree, Eovaldi, Bridges, Childers, and Butler conspired to send Plaintiff to segregation when they orchestrated a re-hearing before the adjustment committee.

Because of the adjustment committee decision and one-year segregation sentence, Plaintiff was transferred to Pontiac Correctional Center. Plaintiff was confined in segregation from February 2016 to February 2017. He was confined 24 hours per day and denied commissary and other privileges. His communication with his family and friends deteriorated while in segregation.

He was "unable to benefit" from his Court ordered visitation with his minor daughter while in segregation. The one-year segregation sentence was harsh, lengthy, and unreasonable. Plaintiff suffered mental and emotional injuries.

Warden Butler, John Baldwin, and the members of the adjustment committee (Lee, Brookman, Keys, Baker, and Hart) had been advised in writing of Plaintiff's deep-sleep condition but transferred him to Pontiac without addressing his medical need for his traumatic brain injury ("TBI") that caused the deep-sleep condition. Upon arrival at Pontiac Plaintiff advised mental health staff Molinero, the Pontiac Medical Director, the John Doe Wexford Health representative, Warden Melvin, Counselor Demattia, and Counselor Simmons of his medical condition. He sent at least seven requests to Pontiac internal affairs asking to meet with them to discuss security concerns, placement, cell-assignments, and his deep-sleep disorder to make certain he would not be harmed in his sleep.

On July 31, 2016, while in segregation at Pontiac, Plaintiff was sexually assaulted while asleep by Pontiac Correctional staff member John Doe 1 who had keys to open his cell. Additionally, between November 9, 2016 and November 13, 2016, Pontiac Correctional staff members John Does 2 and 3 entered Plaintiff's cell while he was asleep and used an instrument with a sharp edge to make dotted track lines on his arms. He suffered pain, injury, bruising, and required mental health and medical treatment because of the sexual assault and dotted track lines. Plaintiff reported the attacks to Warden Melvin, Governor Rauner, and Pontiac Correctional Officers and Internal Affairs Officers John Does 10-17. He also reported the attacks to medical staff including Jane Doe nurse, the Director of Nursing, the Medical Director, mental health staff member Molinero and the Pontiac PREA Coordinator. According to internal affairs, correctional staff did not report Plaintiff's request for an investigation to internal affairs and mailroom staff did

not forward his written complaints and request for an investigation. Correctional staff stated all requests and notes that he placed in prison mail by handing them to correctional staff were forwarded to internal affairs. Internal affairs and Warden Melvin acknowledged receipt of Plaintiff's correspondence addressed to Governor Rauner about the unauthorized entry in his cell during his deep-sleep, the sexual assault, and other retaliatory targeted acts directed at Plaintiff by IDOC staff. No one investigated the sexual assault, markings on his arms, and unauthorized cell entries. Plaintiff sent notes to the internal affairs office requesting that video recordings be checked for unauthorized entry into his cell. However, John Does 10-17 destroyed the notes and altered or destroyed the video recordings to cover up the sexual and physical attacks.

Plaintiff requested and was denied medical screening, a referral to a neurologist, and treatment for his TBI and deep-sleep medical condition by John Does 4-7, the Menard Medical and Mental Health Directors and the Pontiac Medical and Mental Health Directors. He was told by those individuals, without any proper evaluation or screening, that Wexford Health Sources, Inc., will not pay for a neurologist or treatment for a deep-sleep disorder or TBI. They further stated that they know Wexford is wrong and that the policy infringes on a patient's right to medical care and their duty to provide treatment, but that is how things are in prison. The failure to treat or refer him to a neurologist contributed to Plaintiff's long-term health complications, which includes cognitive impairment, debilitating speech, deep-sleep condition, blurred vision, and memory loss. Wexford's policies and practices are designed to intentionally fail to diagnose and treat patients as a means to cut cost and reduce staff.

**<u>Preliminary Matter</u>**

There is some discrepancy and confusion regarding the John and Jane Doe defendants identified in the case caption, the list of defendants, the statement of facts, and the statement of

legal claims. In an attempt to reconcile the information, the Court designates the following Doe defendants: **John Doe 1**, *Pontiac Correctional Staff*; **John Does 2-3**, *Pontiac Correctional Staff*; **John Does 4-7**, *Menard and Pontiac Mental Health and Medical Directors*, **John/Jane Doe 8**, *Pontiac Placement Officer*; **John/Jane Doe 9**, *Menard Placement Officer*; **John Does 10-17**, *Pontiac Correctional Officers and Internal Affairs Officers*; **John Does 18-19**, *Menard Adjustment Committee Members*; **John Doe 20**, *Menard Internal Affairs Officer*. To the extent Plaintiff names other "Unknown Does," he makes no factual allegations against them and they will be dismissed.

Plaintiff names Sherry Benton and Melissa Phoenix as defendants but makes no allegations against them. Additionally, in a footnote to the list of defendants, Plaintiff asserts that Rob Jeffries, the current IDOC Director, is automatically substituted when relevant. Under Federal Rule of Civil Procedure 8, a Complaint must include a short, plain statement of the case against each individual. Merely naming an individual as a defendant is not sufficient to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Benton, Phoenix, and Jeffries will be dismissed for failure to state a claim.

Plaintiff names Pontiac Warden Michael P. Melvin and John/Jane Doe 8, Pontiac Placement Officers, as defendants but it is unclear what, if any, claim he intends to assert against these individuals. Plaintiff set forth eleven legal claims in his First Amended Complaint but did not include Melvin or John/Jane Doe 8 in any of those claims. Accordingly, Melvin and John/Jane Doe 8 will be dismissed for failure to state a claim.

Plaintiff also references various individuals throughout the First Amended Complaint that are not identified as defendants in the case caption. The Court will not treat individuals not listed in the caption as defendants, and any claims against them are considered dismissed without prejudice. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding that to be

properly considered a party, a defendant must be specified in the caption).

Finally, Plaintiff seeks to assert claims against Menard officials and former IDOC Director Baldwin for events that occurred at Pontiac. According to Plaintiff, the individuals associated with the disciplinary proceedings at Menard are responsible for his assignment to segregation at Pontiac and, therefore, responsible for the assaults he endured at Pontiac. Thus, he improperly attempts to assert state law battery claims against Lee, Brookman, Keys, Baker, Hart, Baldwin, Butler, Bridges, Childers, and Eovaldi for the physical and sexual assaults committed by John Does 1-3 while he was in segregation at Pontiac. Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago,* 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 Ill. Comp. Stat. 5/12–3(a)). Accordingly, Plaintiff cannot state a battery claim against Lee, Brookman, Keys, Baker, Hart, Baldwin, Butler, Bridges, Childers, and Eovaldi and they are dismissed from that claim.

Plaintiff also asserts a failure to protect claim against Menard officials Crabtree, Warden Butler, John/Jane Doe 9, and John Doe 20 for the assaults that allegedly occurred while he was in segregation at Pontiac. To state a claim against prison officials for failure to protect, a plaintiff must establish: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). As such, Plaintiff must allege facts sufficient to show "that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* Plaintiff's allegations fail to state a failure to protect claim against the Menard

officials for the assaults at Pontiac. Accordingly, that claim is dismissed.

## Claims

Based on the allegations in the Amended Complaint, and as a result of the preliminary dismissals, the following Counts are designated for the remaining claims:

**Count 1:** **Eighth Amendment deliberate indifference/failure to protect claim against Crabtree, John/Jane Doe 9, Warden Butler, John Doe 20, and John Baldwin for failure to take precautions to remove Plaintiff or his cellmate prior to the incident on February 24, 2016.**

**Count 2:** **Civil conspiracy claim against Crabtree, Warden Butler, John/Jane Doe 9, and John/Jane Doe 20 for conspiring to leave Plaintiff in his cell to be attacked by his cellmate.**

**Count 3:** **Fourteenth Amendment due process claim against Lee, Brookman, Keys, Baker, Hart, Butler, Baldwin, and John Does 18 and 19 regarding the disciplinary proceedings, including the rehearing, that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017.**

**Count 4:** **State law defamation claim against Bridges, Page, Monte, Childers, and Eovaldi for false and misleading oral and written statements published in the disciplinary reports, adjustment committee final summary report, and that otherwise occurred during the disciplinary process.**

**Count 5:** **State law intentional infliction of emotional distress claim against Lee, Brookman, Keys, Baker, Hart, Baldwin, Butler, Bridges, Childers, and Eovaldi for their conduct related to the disciplinary proceedings that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017 for an offense that he did not commit.**

**Count 6:** **Official misconduct claim against John Does 18 and 19 that conducted the rehearing on June 1, 2016 under false pretenses, based on false reports, and without Plaintiff's presence.**

**Count 7:** **State law battery claim against John Doe 1 for the sexual assault that occurred while Plaintiff was in segregation during his deep sleep medical condition.**

>  **Count 8:** State law battery claim against John Does 2 and 3 for the mutilation of Plaintiff's arm committed while Plaintiff was in segregation during his deep sleep medical condition.
>
>  **Count 9:** Destruction and/or spoliation of evidence against John Does 10-17 for disposing of Plaintiff's notes to internal affairs and the video recordings relevant to the unauthorized entry in Plaintiff's cell in segregation when he was sexually and physically assaulted.
>
>  **Count 10:** Eighth Amendment deliberate indifference claim against John Does 4-7 and Wexford Health Sources, Inc., for failure to evaluate and treat his deep sleep condition and traumatic brain injury.

Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1]

## **Severance**

As Plaintiff asserts claims against more than 30 defendants for violations of his constitutional rights and state law that allegedly occurred while he was incarcerated at 2 different prisons, the Court must determine whether the claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Federal Rule of Civil Procedure 21 grants

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, there are three groups of claims. The first group relates to the February 24, 2016 assault and the resulting disciplinary proceedings at Menard. The second group relates to the physical and sexual assaults that occurred while Plaintiff was in segregation at Pontiac and the allegations that notes and video recordings were destroyed. The third group of claims is based on Plaintiff's allegations that the medical and mental health directors at Menard and Pontiac, along with Wexford Health Sources, refused to provide treatment for his deep-sleep condition and TBI. These groups of claims are unrelated, include different defendants, involve separate transactions or occurrences, and do not involve a common question of fact or law. Accordingly, consistent with *George v. Smith* and Federal Rules of Civil Procedure 20 and 21, the Court will sever the claims in groups two and three into two separate actions. The First Amended Complaint will be subject to review under 28 U.S.C. § 1915A in the newly severed cases.

**Severed case #1** will include **Counts 7, 8,** and **9**, which relate to the physical and sexual assaults that occurred while Plaintiff was in segregation at Pontiac and the allegations that notes and video recordings were destroyed. The Defendants are **John Doe 1**, *Pontiac Correctional Staff*; **John Does 2-3**, *Pontiac Correctional Staff*; **John Does 10-17**, *Pontiac Correctional Officers and Internal Affairs Officers*

**Severed case #2** will include **Count 10** based on Plaintiff's allegations that the Medical and Mental Health Directors at Menard and Pontiac, along with Wexford Health Sources, refused to provide treatment for Plaintiff's deep-sleep condition and TBI. The Defendants are **John Does 4-7**, *Menard and Pontiac Mental Health and Medical Directors* and **Wexford Health Sources, Inc.**

The claims remaining in this case are **Counts 1-6** against Defendants **John Baldwin**, **Kent E. Brookman**, **Correctional Officer Crabtree, Major Page, Michael M. Keys, Kimberly S. Butler, Frank Eovaldi, Yvett Baker, Jason N. Hart, Correctional Officer Bridges, Major Childers, Major Monte, John/Jane Doe 9, John Does 18-19, John Doe 20,** and **Lieutenant Lee**. The Court will enter a separate screening order for those claims pursuant to 28 U.S.C. § 1915A as soon as practicable.

### Disposition

**IT IS ORDERED** that **Counts 7, 8,** and **9** are **SEVERED** into a new case against Defendants **John Doe 1**, *Pontiac Correctional Staff*; **John Does 2-3**, *Pontiac Correctional Staff*; and **John Does 10-17**, *Pontiac Correctional Officers and Internal Affairs Officers*. The Clerk of Court is **DIRECTED** to **TERMINATE** those Defendants as parties to this action.

**IT IS ORDERED** that **Count 10** is **SEVERED** into a new case against Defendants **John Does 4-7**, *Menard and Pontiac Mental Health and Medical Directors* and **Wexford Health Sources, Inc**. The Clerk of Court is **DIRECTED** to **TERMINATE** those Defendants as parties to this action.

In each newly-severed case, the Clerk of Court is **DIRECTED** to file the following documents:

1) The Amended Complaint (Doc. 42);
2) The Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2);
3) This Memorandum and Order Severing Case.

**IT IS ORDERED** that the **only claims remaining in this action** are **Counts 1-6** against Defendants **John Baldwin**, **Kent E. Brookman**, **Correctional Officer Crabtree, Major Page, Michael M. Keys, Kimberly S. Butler, Frank Eovaldi, Yvett Baker, Jason N. Hart,**

**Correctional Officer Bridges, Major Childers, Major Monte, John/Jane Doe 9, John Does 18-19, John Doe 20,** and **Lieutenant Lee**. No service will be ordered on these Defendants until the Section 1915A review is completed.

**IT IS ORDERED** that Defendants **Sherry Benton, Melissa Phoenix, Rob Jeffries, Michael P. Melvin, John/Jane Doe 8**, *Pontiac Placement Officer*, and **the remaining John Does** are **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **TERMINATE** those Defendants as parties to this action.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 15, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**