IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **FREDRICK GOINGS, #M36022,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 19-cv-00212-SMY |
| ) | |
| **JOHN BALDWIN,** *IDOC Director* ) | |
| **KENT E. BROOKMAN,** ) | |
| **CORRECTIONAL OFFICER CRABTREE,** ) | |
| **MAJOR PAGE,** ) | |
| **MICHAEL M. KEYS,** ) | |
| **KIMBERLY S. BUTLER,** ) | |
| **FRANK EOVALDI,** ) | |
| **YVETT BAKER,** ) | |
| **JASON N. HART,** ) | |
| **CORRECTIONAL OFFICER BRIDGES,** ) | |
| **MAJOR CHILDERS,** ) | |
| **MAJOR MONTE,** ) | |
| **JOHN/JANE DOE 9,** *Menard Placement* ) | |
| *Officer,* ) | |
| **JOHN DOES 18-19,** *Menard Adjustment* ) | |
| *Committee Members,* ) | |
| **JOHN DOE 20,** *Menard Internal Affairs Officer,* ) | |
| **LIEUTENANT LEE,** ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Fredrick Goings, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Upon review of the First Amended Complaint, the Court severed a number of Plaintiff's claims into separate actions. The claims remaining in this case are now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28

U.S.C. § 1915A(a).  Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).

## **The First Amended Complaint**

Plaintiff makes the following allegations in the First Amended Complaint relevant to the claims in this case (Doc. 42):  In the weeks prior to February 24, 2016, Plaintiff's cellmate at Menard Correctional Center engaged in "homosexual and oppressive tactics and harassment" in the cell.  He invaded Plaintiff's privacy several times, including one occasion when he removed the curtain in the bathroom section of the cell while Plaintiff was standing in the nude bathing. Plaintiff's cellmate also used offensive and derogatory language and challenged Plaintiff to a fight on multiple occasions.  Plaintiff advised C/O Crabtree, Menard Placement Officer John/Jane Doe 9, Warden Butler, Menard Internal Affairs Officer John Doe 20 of these incidents, and on multiple occasions, requested verbally and/or in writing that he or his cellmate be reassigned to avoid the possibility of a violent confrontation.  He also wrote letters to IDOC Director John Baldwin prior to the incident requesting single-man cell status and a transfer from Menard because of targeted attacks arranged and orchestrated by Menard correctional staff and because he developed a deep-sleep medical condition as a result of a strangulation incident while incarcerated.

On February 24, 2016, Plaintiff's cellmate threatened his life and told him he would be leaving the cell by choice or by force.  The cellmate initiated a physical confrontation and Plaintiff defended himself.  Plaintiff was found in his cell with his cellmate who was incoherent, lying on the floor in a pool of blood, and with a swollen and bleeding face.  Plaintiff was then placed in segregation. Plaintiff was later told by his former cellmate that correctional staff encouraged the cellmate to start a fight with Plaintiff to force him out of the cell and into segregation so that correctional staff

could arrange to have him harassed while in segregation. Plaintiff was informed by witnesses that correctional staff solicited and encouraged his cellmate to start the fight on February 24, 2016.

Plaintiff received a disciplinary ticket for violent assault written by C/O Bridges, Major Page, and Major Monte. A "re-written" disciplinary report was authored by C/O Bridges, Major Childers, and Major Frank Eovaldi. C/O Bridges, Major Page, Major Monte, Major Childers, and Major Eovaldi made false and misleading oral and written statements to Plaintiff, healthcare staff, and the adjustment committee during the disciplinary proceedings.

Lieutenant Lee and Jason Hart denied Plaintiff a reasonable continuance to prepare for the disciplinary hearing, denied him a copy of the alleged victim's written statement, and failed to interview the witnesses Plaintiff tendered prior to the March 1, 2016 disciplinary hearing. Warden Butler failed to consider evidence that established Plaintiff's innocence prior to her concurrence with the decision of the adjustment committee, and instead, merely rubber stamped the committee's findings and decision. Yvett Baker failed to consider evidence that pointed to Plaintiff's innocence, failed to interview witnesses prior to the hearing, and failed to provide proper notice of the proceedings.

Kent Brookman and Michael Keys did not give Plaintiff notice of a rehearing held on June 1, 2016. Brookman failed to provide Plaintiff with a copy of the alleged victim's statement, failed to interview witnesses, and failed to give Plaintiff a copy of the re-written allegations prior to the hearing. The hearing was held without Plaintiff present. Plaintiff was transferred from Menard to Pontiac on June 1, 2016, prior to the time of the hearing. Warden Butler was aware that Plaintiff transferred to Pontiac prior to the 7 a.m. – 3 p.m. shift and that it was therefore impossible for Plaintiff to be at a hearing that took place at Menard at 7:15 a.m. on June 1, 2016. John Does 18 and 19 conducted the rehearing on June 1, 2016 under false pretenses, based on false reports, and

without Plaintiff's presence. Plaintiff wrote letters to former acting IDOC Director John Baldwin advising him of the lack of due process and abuse of process related to the disciplinary proceedings, but no action was taken in response.

Because of the adjustment committee decision and one-year segregation sentence, Plaintiff was transferred to Pontiac Correctional Center. Plaintiff was confined in segregation from February 2016 to February 2017. He was confined 24 hours per day and denied commissary and other privileges. His communication with his family and friends deteriorated while in segregation. He was "unable to benefit" from his Court ordered visitation with his minor daughter while in segregation.

Based on the allegations in the First Amended Complaint, the Court finds it convenient to designate the following Counts in this *pro se* action:

> Count 1: Eighth Amendment deliberate indifference/failure to protect claim against Crabtree, John/Jane Doe 9, Warden Butler, John Doe 20, and John Baldwin for failure to take precautions to remove Plaintiff or his cellmate prior to the incident on February 24, 2016.
>
> Count 2: Civil conspiracy claim against Crabtree, Warden Butler, John/Jane Doe 9, and John/Jane Doe 20 for conspiring to leave Plaintiff in his cell to be attacked by his cellmate.
>
> Count 3: Fourteenth Amendment due process claim against Bridges, Page, Monte, Childers, and Eovaldi for issuing false disciplinary reports and against Lee, Brookman, Keys, Baker, Hart, Butler, Baldwin, and John Does 18 and 19 regarding the disciplinary proceedings, including the rehearing, that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017.
>
> Count 4: State law defamation claim against Bridges, Page, Monte, Childers, and Eovaldi for false and misleading oral and written statements published in the disciplinary reports, adjustment committee final summary report, and that otherwise occurred during the disciplinary process.
>
> Count 5: State law intentional infliction of emotional distress claim against

                    Bridges, Page, Monte, Childers, Eovaldi, Lee, Brookman, Keys, Baker, Hart, Butler, Baldwin, and John Does 18 and 19 for their conduct related to the disciplinary proceedings that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017 for an offense that he did not commit.

Count 6:      Official misconduct claim against John Does 18 and 19 that conducted the rehearing on June 1, 2016 under false pretenses, based on false reports, and without Plaintiff's presence.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

An Eighth Amendment failure to protect claim arises when a plaintiff is incarcerated under conditions posing a substantial risk of serious harm and the defendant acts with deliberate indifference to the Plaintiff's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir.2010). "[A] generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (internal citations and quotations omitted). Instead, a plaintiff must allege "a tangible threat to his safety or well-being" and "a substantial risk of future harm." *Id.* Prison officials must be aware of a specific, impending, and substantial threat to Plaintiff's safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Wilson*, 451 F. App'x at 589.

At the screening stage, Plaintiff's allegations are sufficient to proceed on a failure to protect claim against C/O Crabtree, Menard Placement Officer John/Jane Doe 9, Menard Internal Affairs Officer John Doe 20, and Warden Butler. The allegations do not suggest, however, that IDOC Director John Baldwin, was aware of the threat posed by the cellmate. Although Plaintiff alleges he wrote to Baldwin prior to the incident, the communications related to other issues. Accordingly, Count 1 will be dismissed as to Baldwin.

**Count 2**

To state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Plaintiff must present more than a bare allegation that a conspiracy exists. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Plaintiff's allegations are not sufficient to state a claim for civil conspiracy. He does not provide facts sufficient to allege that C/O Crabtree, Menard Placement Officer John/Jane Doe 9, Menard Internal Affairs Officer John Doe 20, Warden Butler, and IDOC Director John Baldwin agreed to a scheme to deprive him of his constitutional rights. "An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556–557 (2007); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Brooks v. Ross*, 578 F. 3d 574, 581 (7th Cir. 2009) (Although the courts are obligated to accept factual allegations as true, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). Accordingly, Count 2 will be dismissed.

**Count 3**

To state a procedural due process claim under the Fourteenth Amendment, Plaintiff must show that he was deprived of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The right to due process is triggered only when a protected interest is at stake. A court analyzing this claim in the context of prison disciplinary hearings must consider: (1) whether there was a protected interest at stake that necessitated due process protections; and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Id.*

Plaintiff was punished with one year in disciplinary segregation, which may be sufficient to trigger Fourteenth Amendment due process requirements. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting that a "claim of confinement in segregation for 240 days may implicate a liberty interest"). Accordingly, without delving into the conditions of segregation, the Court finds that Plaintiff has alleged a protected interest.[1]

This brings the Court to the second consideration: whether the disciplinary proceeding was conducted in accordance with procedural due process requirements. Procedural due process in a prison disciplinary proceeding requires compliance with the protections articulated in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Specifically, an inmate is entitled to (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written

---

[1] As a result of the disciplinary action, Plaintiff received one-year disciplinary segregation, commissary restriction, and visitation restriction. Only the disciplinary segregation presents a viable constitutional claim. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges); *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (withdrawal of visitation privileges for a limited period of time as a disciplinary measure is not a dramatic departure from accepted standards for conditions of confinement); *Billups v. Galassi*, 202 F.3d 272 (7th Cir. 2000) (visiting privileges with girlfriend could be permanently revoked without a hearing "or any other due process protection" because the denial of a specific visitor's privileges was "well within the terms of confinement ordinarily contemplated by a prison sentence"). Thus, the other aspects of Plaintiff's disciplinary punishment are irrelevant to the Court's consideration.

statement of the reasons for the discipline imposed. *Wolff*, 418 U.S. at 563-69.  The disciplinary decision must also be supported by "some evidence."  *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Plaintiff's allegations against Bridges, Page, Monte, Childers, Eovaldi, Lee, Hart, Baker, Brookman, Keys, and John Does 18 and 19 are sufficient at the screening stage to proceed on a Fourteenth Amendment procedural due process claim.  However, Plaintiff fails to state a viable claim against Warden Butler and IDOC Director John Baldwin.  Accordingly, the claim in Count 3 will proceed against Bridges, Page, Monte, Childers, Eovaldi, Lee, Hart, Baker, Brookman, Keys, and John Does 18 and 19, but will be dismissed as to Butler and Baldwin.

**Count 4**

Where a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

To state a state law claim for defamation, a plaintiff must sufficiently allege that: (1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of the defamatory statement to a third party by the defendant, and (3) the plaintiff has suffered damages. *Gibson v. Philip Morris, Inc.*, 292 Ill.App.3d 267, 226 Ill.Dec. 383, 685 N.E.2d 638, 643 (1997).  Plaintiff's defamation claim is based on the facts and allegations supporting his civil rights claim in Count 3 and are sufficient to allow Count 4 to proceed against Bridges, Page, Monte, Childers, and Eovaldi.

**Count 5**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must allege: (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017). Plaintiff's allegations are sufficient at the screening stage to allow Count 5 to proceed against Bridges, Page, Monte, Childers, Eovaldi, Lee, Hart, Baker, Brookman, Keys, and John Does 18 and 19, but as with Count 3, will be dismissed as to Butler and Baldwin.

**Count 6**

Plaintiff claims "official misconduct" against John Does 18 and 19, who allegedly conducted the rehearing on June 1, 2016 under false pretenses, based on false reports, and without Plaintiff's presence. However, there is no legal authority for this claim under federal or state law. There is a criminal charge of official misconduct under Illinois law, 720 ILCS 5/33-3(a)(1-4), but Illinois does not recognize a private cause of action based on this statute. *See Houck v. USA*, No. 16-CV-1396-JPG, 2017 WL 1739695, at *12 (S.D. Ill. May 4, 2017). Accordingly, Count 6 fails to state a claim for relief and will be dismissed.

**<u>Identification of John and Jane Doe Defendants</u>**

The Warden of Menard Correctional Center will be added as a defendant in his or her official capacity only, for purposes of responding to discovery aimed at identifying the Doe Defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009); FED. R. CIV. P. 21. Guidelines for discovery will be set by the undersigned judge. Once the names of

the Doe Defendants are discovered, Plaintiff *shall file a motion to substitute* the newly identified Defendants for the Doe Defendants.

### Injunctive Relief

Plaintiff is no longer incarcerated at Menard. Therefore, and any request for injunctive relief is moot. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot.").

### Disposition

**IT IS HEREBY ORDERED:** Count 1 will proceed against Crabtree, John/Jane Doe 9, John Doe 20, and Butler but is **DISMISSED** without prejudice as to Baldwin; Count 2 is **DISMISSED** without prejudice; Count 3 will proceed against Bridges, Page, Monte, Childers, Eovaldi, Lee, Hart, Baker, Brookman, Keys, and John Does 18 and 19 but is **DISMISSED** without prejudice as to Butler and Baldwin; Count 4 will proceed against Bridges, Page, Monte, Childers, and Eovaldi; Count 5 will proceed against Bridges, Page, Monte, Childers, Eovaldi, Lee, Hart, Baker, Brookman, Keys, and John Does 18 and 19 but is **DISMISSED** without prejudice as to Butler and Baldwin; and Count 6 is **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **TERMINATE** John Baldwin as a party and to **ADD** the **Warden of Warden Correctional Center**, in his or her official capacity only, to the docket for purposes of responding to discovery aimed at identifying the Doe Defendants.

The Clerk of Court shall prepare for Correctional Officer Crabtree, Kimberly Butler, Correctional Officer Bridges, Major Page, Major Monte, Major Childers, Frank Eovaldi, Lieutenant Lee, Jason Hart, Yvett Baker, Kent Brookman, and Michael Keys: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of

Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the Doe Defendants until such time as Plaintiff has identified them by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 14, 2020**

<u>*s/ Staci M. Yandle*</u>
**STACI M. YANDLE**
**United States District Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.