## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

FREDERICK GOINGS #M36022,  )
                                                   )
             Plaintiff,  )
                                                   )
vs.  )   Case No. 19-CV-212-SMY
                                                   )
KENT E. BROOKMAN, et al,  )
                                                   )
             Defendants.  )

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

       Now pending before the Court is the Motion for Summary Judgment filed by Defendants Kent E. Brookman, Christopher Crabtree, Kevin Page, Michael M. Keys, Kimberly S. Butler, Frank Eovaldi, Yvette Baker, Jason N. Hart, Kalin Bridges, Major Childers, Michael Monje[1], and Tracy Lee (Doc. 131), which Plaintiff Frederick Goings opposes (Docs. 141, 142). For the following reasons, the motion is **GRANTED in part**.

### <u>Factual Background</u>

       The following material facts are undisputed unless otherwise noted: During the relevant period, Defendants were staff members of Menard Correctional Center and Goings was an inmate at the facility (Goings Deposition, Doc. 132-1 at 9:7-18). Goings' cellmate was Jeremy Matthews. (*Id.* at 17:8-11). Matthews moved into Goings' cell on or about February 10, 2016, but they both had a lower bunk bed permit. (*Id.* at 18:1-14). Goings allowed Matthews to use the lower bunk bed until one of them could transfer to a new cell. (*Id.* at 18:16-25). Over the subsequent two-week period, Goings grew irritated with what he perceived as Matthews' invasion of his privacy, including looking around the shower area while Goings showered and positioning a mirror to

---

[1] Monje's last name is occasionally spelled as "Monte" in the briefing and related documents.

watch Goings while he slept. (*Id.* at 19:1-24). Goings complained to CO Crabtree that Matthews had committed these acts, "threatened [his] safety and used threats of physical violence." (*Id.* at 20:14-23). Matthews had challenged Goings to fights and Goings told CO Crabtree to "move me or him in order to avoid any physical combative situation." (*Id.* at 21:14-19.) Goings spoke with CO Crabtree "at least five times." (*Id.* at 24:25 to 25:2). He sent a request to Warden Butler, stating Matthews had been acting strangely in the cell and was planning to attack him. (*Id.* at 40:20-24.) Goings spoke directly with Warden Butler about one of his requests. (*Id.* at 39:10-23).

On or about February 24, 2016, Goings was in his cell while Matthews went out into the prison yard. (*Id.* at 23:9-13). When Matthews returned to the cell around 1:00 P.M., he told Goings that "by choice or by force" he had until 3:00 P.M. to vacate the cell. (*Id.* at 23:11-16). Goings told Matthews that only prison officials controlled the "flow of who leaves and who stays." (*Id.* at 23:16-20). Matthews then swung at Goings. (*Id.* at 24:10-11). He threw additional punches that Goings blocked. Goings then punched Matthews. (*Id.* at 27:17-23).

Following the altercation, several Menard staff members prepared incident reports, all of which described finding Matthews unresponsive and bloody in Goings' cell (Docs. 132-2, 132-3, 132-4). Goings received a Disciplinary Report for a level 100 infraction, violent assault of any person, which was issued by CO Bridges and signed by Major Page and Major Monje (Doc. 132-5). The Disciplinary Report states in relevant part:

> This disciplinary report is being issued as a result of an investigation that began on 2/24/16. On the above date at approximate time, staff reported a medical emergency in North Upper cell house, cell 5-05. Responding staff reported offender GOINGS was observed in the back of the cell while his cellmate, offender MATTHEWS K71403, was incoherent, lying on the cell floor in a pool of blood. . . his (MATTHEWS) face was swollen and bleeding, and was unable to respond to staff. Offender MATTHEWS was rushed to local hospital by EMS personnel for emergency care. Offender MATTHEWS suffered head/facial trauma with soft tissue swelling, and facial lacerations requiring 25 stitches. Following the assault, GOINGS refused to speak with investigators and requested a lawyer. Multiple confidential sources stated they overheard GOINGS state, 'Someone had better get

him out of here because I don't want to have to kill him,' referring to offender MATTHEWS. Offender GOINGS was identified by identification card and institutional graphics. End of Report.

(Doc. 132-5, pp. 1-2).

Goings received the Disciplinary Report (Doc. 132-1 at 44:1-4) and pled not guilty (Doc. 132-6, p. 1). On March 1, 2016, Goings attended a hearing on the Disciplinary Report. He made objections and had an opportunity to speak, albeit with some interruptions. (Doc. 132-1 at 58:11-25). Goings recalls that there were at least "17 correctional officers" at the hearing and he made multiple objections to the number of people in the room, the people who kept questioning him, and his inability to refresh his recollection with descriptions of the assault. (*Id.*) He was aware that there were "neighbor witnesses [around the cell]" and requested their names and full statements but was not provided with that information. (*Id.* at 37:8-13). The Adjustment Committee, made up of Defendants Kent Brookman and Michael Keys, found Goings guilty. (Doc. 132-6).

Goings filed a grievance dated March 18, 2016 regarding the ticket and the Adjustment Committee hearing (Doc. 132-7). The grievance officer remanded the Disciplinary Report to internal affairs to be rewritten and to the adjustment committee to be reheard because the original report did not comport with Department Rule 504 (Doc. 132, ¶ 23).

The parties disagree on whether Goings attended the rehearing, but the rewritten ticket indicates that, "[Goings] wants a victims [sic] statement of the fact the he himself assaulted this acclaimed inmate" (Doc. 132-9, p. 1). On June 1, 2016, the Adjustment Committee found Goings guilty on the rewritten ticket and recommended that he be disciplined with one year C grade, one year segregation, restitution, and commissary restriction. (*Id.*) Defendant Kent Brookman was the chairperson of the Adjustment Committee and Defendant Jason Hart was also present. (*Id.*) The Chief Administrative Officer, Anthony Wills, signed off on the Adjustment Committee final

summary report and the report was served on Goings by Yvette Baker on June 10, 2016 (Doc. 132-9, p. 2).

The findings in the Adjustment Committee summary were different from the original hearing summary in that each confidential informant statement was specifically quoted (Doc. 132-9). According to the summary report, Confidential Source number one overheard Goings state "get help, get a C/O before I kill him, I don't want to kill him." (*Id.*) Confidential Source number two overheard Goings state, "get some help to the cell; I don't want the guy to die." (*Id.*) Confidential Source number three stated Goings called out to him after the fight because Matthews was dying in the cell. (*Id.*)

Goings filed the instant lawsuit pursuant to 42 U.S.C. § 1983 (Doc. 1). He is proceeding on the following claims:

Count One: Eighth Amendment deliberate indifference/failure to protect claim against Crabtree and Warden Butler for failure to take precautions to remove Plaintiff or his cellmate prior to the incident on February 24, 2016;

Count Three: Fourteenth Amendment due process claim against Bridges, Page, Monte, Childers, Eovladi, Lee, Brookman, Keys, Baker, and Hart, regarding the disciplinary proceedings, including the rehearing, that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017;

Count Four: State law defamation claim against Bridges, Page, Monte, Childers, and Eovaldi for false and misleading oral and written statements published in the disciplinary reports, adjustment committee final summary report, and that otherwise occurred during the disciplinary process;

Count Five: State law intentional infliction of emotional distress claim against Lee, Brookman, Keys, Baker, Hart, Page, Monte, Butler, Bridges, Childers, and Eovaldi for their conduct related to the disciplinary proceedings that resulted in Plaintiff being found guilty of an IDOC offense and being confined to segregation from February 24, 2016 until February 1, 2017 for an offense that he did not commit.

(Doc. 48, p. 10).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party.  *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

### Count 1: Failure to Protect

Prison officials have a duty to protect prisoners from violence.  *Farmer v. Brennan*, 511 U.S. 825, 831-33 (1994).  To prevail on an Eighth Amendment failure to protect claim, a prisoner must demonstrate that prison officials were deliberately indifferent to his welfare, effectively condoning the attack by allowing it to happen.  *Haley v. Gross*, 86 F.3d 630, 640-641 (7th Cir. 1996).  More specifically, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it."  *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

Here, Goings testified that he told CO Crabtree about Matthews' threats, and asked to be moved in order to avoid a physical confrontation.  He also testified that he sent a request to Warden Butler in which he indicated that Matthews was planning a "sneak attack" against him and asked her whether she had received his request forms.  Based on this evidence, a jury could reasonably find that CO Crabtree and Warden Butler had knowledge of the impending fight and should have

acted to prevent it.  As such, Goings' testimony creates a material issue of fact precluding summary judgment with respect to the failure to protect claim against CO Crabtree and Warden Butler.

### Qualified Immunity

CO Crabtree and Warden Butler assert that even if an assault occurred, they are entitled to qualified immunity.  Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher,* 267 F.3d 648, 652 (7th Cir. 2001).  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010), quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

As previously noted, the record contains facts from which a jury could reasonably conclude that CO Crabtree and Warden Butler violated Goings' constitutional rights by failing to prevent the physical confrontation between him and his cellmate, Matthews.  At the time in question, the unconstitutionality of the failure to protect in this context was clearly established and should have been known to CO Crabtree and Warden Butler.  *Farmer v. Brennan*, 511 U.S. 825 (1994) (prison officials have a duty to protect prisoners from assault).  Thus, these defendants are not entitled to qualified immunity.

### Count 3: Due Process for Disciplinary Ticket

Goings alleges a procedural due process claim with respect to the discipline imposed following the fight between he and Matthews.  To establish a procedural due process claim, a plaintiff must show that (1) "he has a liberty or property interest that the state has interfered with;

and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007).

Goings was sentenced to one year in disciplinary segregation, which implicates a protectable liberty interest triggering procedural due process safeguards. *See Marion v. Columbia Correction Inst.,* 559 F.3d 693, 698 (7th Cir. 2009). In the context of disciplinary proceedings, due process requires that prisoners be afforded "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-572 (1974). The disciplinary decision must be supported by "some evidence." *Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Relatedly, in Illinois prisons, the Adjustment Committee determines whether an inmate is guilty of a disciplinary offense "based upon all relevant information and evidence." Ill. Admin. Code, tit. 20 § 504.80(k). "The Committee must be reasonably satisfied there is some evidence that the offender committed the offense for the individual to be found guilty." Ill. Admin. Code, tit. 20 § 504.80(k)(1).

While Goings concedes that he was given advance written notice of the violation, a chance to speak during the disciplinary hearing, and received a written statement of the evidence relied upon, he argues that the defendants violated due process by not following Department Rule 504, interrupting him at his hearing, using hearsay evidence by not having the confidential witnesses testify, and not allowing him to testify at the rehearing, these alleged violations of internal prison

rules cannot support his claim of a constitutional deprivation. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (the violation of department or local rules is not tantamount to constitutional violations). Despite Goings' displeasure with how the hearing that he attended was conducted, there is no evidence from which a jury can conclude that the hearing violated his procedural due process rights. *Ryan v. Illinois Dept. of Children & Family Servs.,* 185 F.3d 751, 762 (7th Cir. 1999) (plaintiffs should demonstrate that hearings were "shams" in order to proceed with procedural due process claims).

Moreover, the record demonstrates that the Adjustment Committee provided an adequate statement of the evidence it relied on in finding Goings guilty and that it clears the "some evidence" threshold. The evidence consisted of statements from multiple confidential informants, whose names were withheld due to the safety and security concerns of the institution, but who testified similarly that Goings stated that he was going to kill Matthews. *Whitford v. Boglino,* 63 F.3d 527, 535 (7th Cir. 1995). Goings asserts that he should have been able to confront and cross examine these confidential informants, but there is no due process right to confront and cross-examine witnesses in prison discipline hearings. *Baxter v. Palmigiano,* 425 U.S. 308, 321-322 (1976).

Defendants Bridges, Page, Monje, Childers, Eovladi, Lee, Brookman, Keys, Baker, and Hart are entitled to summary judgment with respect to Count 3.

### Count 4: State Law Defamation

Goings alleges that Defendants defamed him by writing that an "assault" had occurred in his disciplinary reports. Under Illinois law, defamation is the publication of a false statement that "tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009), quoting *Tuite v. Corbitt,* 866 N.E.2d 114, 121 (Ill. 2006). To bring a successful claim, a plaintiff must show that an *unprivileged* communication of a false statement caused him

harm.  *Id.* A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable.  *Kuwik v. Starmark Star Marketing & Administration, Inc.,* 619 N.E.2d 129, 133 (Ill. 1993).

A qualified privilege exists as a matter of law if the following elements are present: (1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only.  *Id.*  To overcome the privilege, a plaintiff must prove that the statements were not just untrue, but that "the defendant abused the privilege by intentionally publishing false material or by displaying a 'reckless disregard' as to its truth or falsity." *Tamburo v. Dworkin,* 974 F.Supp.2d 1199, 1214 (N.D. Ill. 2013).

Here, Defendants' descriptions of the assault were made for the legitimate penological purpose of evaluating and imposing discipline, and there is no evidence that they were published to any third parties beyond Menard Correctional Center.  Thus, they were privileged and cannot be the basis for a viable defamation claim.  Summary judgment will be granted with respect to Count 4.

### Count 5: Intentional Infliction of Emotional Distress

In Illinois, a plaintiff must satisfy three elements to state a cause of action for intentional infliction of emotional distress: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress.  Third, the conduct must in fact cause severe emotional distress." *Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 269 (Ill. 2003), quoting *McGrath v. Fahey,* 126 Ill. 2d 78, 86 (Ill. 1988).   As detailed above,

Defendants' actions were neither extreme nor outrageous; they are entitled to summary judgment on Count 5 as well.

<u>**Conclusion**</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 132) is **GRANTED** with respect to Counts 3, 4, 5; these counts are **DISMISSED with prejudice**.  The motion is **DENIED** with respect to Count 1. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case.  This case will be set for a status conference by separate order.[2]

**IT IS SO ORDERED.**

**DATED:  March 23, 2023**

**STACI M. YANDLE**
**United States District Judge**

---

[2] The Court would ordinarily appoint standby counsel for Plaintiff for trial, but in the five years prior to his incarceration, Goings was an Illinois attorney who operated a solo law practice.  (Doc. 132-1 at 10:5-15).  The Court presumes Goings is sufficiently familiar with the relevant rules of procedure and evidence to represent himself at trial without standby counsel.